IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL B.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:19-CV-751 |
| | ) |
| ANDREW SAUL, COMMISSIONER, | ) |
| SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Michael B. ("Michael") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1381f. Michael alleges that the Administrative Law Judge ("ALJ") erred by failing to properly weigh the opinion evidence relating to his physical impairments, and by failing to properly consider his impairments on a function-by-function basis. I conclude that substantial evidence does not support the Commissioner's decision to discount the opinion of Michael's treating physician. Accordingly, I **GRANT in part** Michael's Motion for Summary Judgment (Dkt. 18), **DENY** the Commissioner's Motion for Summary Judgment (Dkt. 20), and **REMAND** this case for further administrative proceedings consistent with this opinion.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

**STANDARD OF REVIEW**

This court's review is limited to determining whether substantial evidence supports the Commissioner's conclusion that Michael failed to demonstrate that he was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d. at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion fails to explain how he weighed the physician opinions in the record.

## CLAIM HISTORY

Michael filed for SSI and DIB in July 2016, claiming that his disability began on June 13, 2016, due to spinal stenosis, arthritis, depression and anxiety. R. 74–75. Michael's date last insured was December 31, 2021; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 30. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Michael's applications at the initial and reconsideration levels of administrative review. R. 74–119. On June 6, 2018, ALJ David Lewandowski held a hearing to consider Michael's claim. R. 46–73. Counsel represented Michael at the hearing, which included testimony from vocational expert Donna Nealon. On October 2, 2018, the ALJ entered his decision analyzing Michael's claims under the familiar five-step process[3] and denying his claim for benefits. R. 28–40.

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

The ALJ found that Michael was insured at the time of the alleged disability onset and that he suffered from the severe impairments of lumbar degenerative disc disease; right foot fracture status post closed reduction; history of left knee meniscectomy; and osteoarthritis of the knees. R. 30. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 32. The ALJ concluded that Michael retained the residual functional capacity ("RFC") to perform a range of light work. R. 32. Specifically, Michael can occasionally perform postural activities but cannot climb ladders, ropes, or scaffolds; occasionally push and pull with the lower extremities; should avoid concentrated exposure to vibrations and should avoid exposure to industrial hazards. R. 32.

The ALJ determined that Michael is unable to perform his past relevant work as a heating and air conditioning installer and servicer and industrial truck operator. R. 39. However, the ALJ determined that Michael could perform other work in the national economy, such as survey worker, cashier and dental floss packer. R. 40. Thus, the ALJ determined that Michael is not disabled. R. 40. Michael appealed the ALJ's decision and the Appeals Council denied his request for review on September 16, 2019. R. 1–6.

## ANALYSIS

### Medical Treatment

Michael suffered from back pain beginning in July 2013. Michael sought treatment with primary care physician Daniel Kelly, M.D., from July 2013 through the date of the ALJ's decision in 2018. Michael consistently complained of back pain and knee pain and weakness. Upon examination, Michael had tenderness on palpation in his lumbar and bilateral paralumbar areas, decreased range of motion and stiff and antalgic gait.

Michael sought pain management treatment for his low back pain with Anthony L. Dragovich, M.D. from March 2015 through 2018.  In March 2015, Michael's lumbar paraspinal muscles were tender to palpation, his range of motion in the lumbar spine was decreased in all directions, and he had increased pain with axial loading, worse with extension and rotation. R. 311.  Dr. Dragovich assessed lumbar degenerative disc disease, lumbar spinal stenosis, and chronic pain syndrome. R. 312.  He prescribed pain medication, including oxycodone and morphine.  Dr. Dragovich referred Michael for a spine surgery consult and noted that if he was not a surgical candidate, he would perform a lumbar epidural. R. 312.  He also noted that Michael had other pain generators, including his knees and lumbar facet joints, that would be addressed after the spine evaluation. Id.

Three months later, in June 2015, Dr. Dragovich discontinued Michael's pain medication due to concerns about his prescriptions being altered and prescribed a pain patch instead. R. 330. Michael noted that he could not afford to have surgery due to child support issues and did not want an injection. R. 328. Dr. Dragovich returned Michael to his previously prescribed oral pain medication at his next visit. R. 340.  In September 2015, Dr. Dragovich noted that Michael appeared to be in significant pain and walked with a forward lean. R. 352.  Michael reported working at Advanced Auto Parts with a lot of standing and increased overtime. Id.  Dr. Dragovich recommended short term disability insurance and reconsidering surgery. R. 354.

Michael continued to see Dr. Dragovich from March 2015 through November 2017, with similar findings and prescribed pain medications, including oxycodone and morphine.

On June 23, 2016, Michael sought treatment with Dr. Kelly and reported bilateral leg weakness and recent falls. R. 402. Dr. Kelly observed swelling in Michael's legs and tenderness in his left lower leg. R. 402–03.  He diagnosed lumbar spinal stenosis, degenerative disc disease,

5

bilateral leg weakness and chronic left ankle pain. Dr. Kelly recommended that Michael stay off work through July 15, 2016. R. 404. An MRI taken of Michael's lumbar spine reflected moderate to marked degenerative disc disease, moderate stenosis of the central canal and lateral recesses, and milder to moderate stenosis of the bilateral neural foramina. R. 426–28.

In April 2017, Michael underwent surgery to repair a fractured right foot. R. 612–19. Specifically, Jason Naldo, DPM, performed a closed reduction of Michael's first through fifth tarsometatarsal fracture dislocations. R. 616–17. An X-ray of Michael's right foot in August 2017 revealed lateral displacement at the first tarsometatarsal joint. R. 748. Michael had a second surgery on his right foot in November 2017. R 762. In December 2017, Michael continued to complain of significant pain in his right foot and was prescribed oxycodone.

In January 2018, Michael began treating with a new pain management physician, Duane Dixon, M.D. R. 892. Michael reported continuous and worsening pain in his lower back, knees and right foot. Michael reported that his pain was better with sitting, heat, lying down and pain medication, and was worse with walking, exercising, standing and cold. R. 892. Dr. Dixon diagnosed chronic pain syndrome, primary generalized osteoarthritis, low back pain, major depressive disorder, nicotine dependence, generalized anxiety disorder, arthropathy, bilateral osteoarthritis of knee, and long-term use of opiate analgesic. R. 897. Dr. Dixon prescribed narcotic pain medication. Id.

On February 9, 2018, podiatrist Dr. Naldo noted that Michael reported significant pain in his right foot. X-rays of the right foot reflected that Michael's joints were in alignment and Dr. Naldo released him to transition out of the boot and return to all normal activity. R. 861. In April 2018, Michael visited Dr. Naldo, and reported significantly decreased foot pain. R. 866. He reported having an established pain management provider and "doing much better in that

6

aspect." Id. Dr. Naldo stated, "I recommend he continue with pain management and from an activity standpoint he has no further restrictions." R. 867.

**Physician Opinions**

On May 22, 2018, Michael's primary care physician Daniel Kelly, M.D., completed a questionnaire regarding Michael's impairments. R. 922–23. Dr. Kelly diagnosed Michael with degenerative disc disease of the lumbar spine, degenerative joint disease of the knee, foot pain and fusion surgery in his foot. R. 922. Dr. Kelly determined that Michael could sit, stand and walk less than two hours in an eight-hour workday; occasionally lift 20 pounds or less; and would be absent from work as a result of his impairments more than four times a month. Id. Dr. Kelly found that Michael's symptoms would interfere with his attention and concentration constantly, he would have "good days" and "bad days" and his limitations relate back to June 2016. Id.

On September 12, 2016, state agency physician Catherine Howard, M.D., reviewed Michael's records and determined that he was capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing, walking and sitting about six hours in an eight-hour workday, and had limited push and pull in his left lower extremity. R. 80. Dr. Howard determined that Michael could occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently balance and stoop; occasionally kneel, crouch and crawl. R. 80–81.

On January 10, 2017, state agency physician William Rutherford, Jr., M.D., reviewed Michael's records on reconsideration and agreed with Dr. Howard's conclusions. R. 114–16. Dr. Rutherford felt that Michael should also avoid concentrated exposure to vibration and even moderate exposure to hazards. R. 115–16.

**ALJ's Findings**

The ALJ set forth Michael's treatment history in summary fashion in his decision. He noted that the record showed no significant issues from June 2016 through August 2017, when Michael fractured his foot. The ALJ stated that the record:

> does not show the claimant reporting he could no longer work, or of constant, intense back pain, as opposed to flare-ups. In December 2017, he had some lumbar findings at times such as tenderness, but at other times, he was normal. In January 2018, his pain management provider noted some significant findings of antalgic gait and being unstable in standing. However, he still had his boot. The claimant's findings later in 2018 continued to be mild or normal. He received an MRI around the time of the alleged onset date and showed marked degenerative disc disease, but not nerve root compression. The record does not indicate a significant increase in his back issues from before the alleged onset date when he was working.

R. 38.

The ALJ began his discussion of medical opinions by noting that Michael's "orthopedic surgeon [Dr. Naldo] stated [Michael] had no restrictions in two visits in 2018." R. 38. The ALJ gave "[t]hese statements" significant weight, noting that this was a specialist treating provider and the opinions are consistent with the mild examination findings in the record. Id.

The ALJ then referenced Dr. Kelly's opinion and gave it little weight, stating,

> [t]he record shows mild lumbar flexion restrictions, and minimal right foot issues after the last surgery. It does not show intense pain. In addition, the evidence indicates the claimant had some opioid dependency. The claimant missed work some around the time of the alleged onset date due to an exacerbation of his back pain, but the record does not show this much, and does not otherwise support the absenteeism limitation.

R. 38.

The ALJ gave significant weight to the opinions of the state agency physicians that Michael could perform light work. The ALJ noted that Michael complained of pain in his left leg due to his back pain, but "the record does not generally how complaints or findings of left

8

lower extremity issues." R. 38. The ALJ also noted that Michael's right foot issues did not result in long-term restrictions. Id.

### Discussion

Michael asserts that the ALJ's decision fails to properly explain the weight he provided to Michael's treating physician Dr. Kelly and is not supported by substantial evidence. I agree.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."[4] 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011).

Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination;

---

[4] The social security regulations regarding the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c (setting out rules for claims filed on or after March 27, 2017, including that no specific evidentiary weight, including controlling weight will be given to any medical opinions). However, as this claim was filed prior to the effective date of the amended rule, I will apply the rules in 20 C.F.R. §§ 404.1527(c), 416.927.

9

(2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

The Fourth Circuit recently clarified the level of explanation required by the ALJ to sufficiently support the weight given to a medical opinion. The ALJ must provide a narrative discussion describing how the evidence in the record supports each of his conclusions, citing specific medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe, 826 F.3d at 189. The failure of an ALJ to specifically state what treatment history or evidence contradicts a particular medical opinion means "the analysis is incomplete and precludes meaningful review." Id. at 190. "Where a lack of specificity and analysis prohibits the district court from gleaning the evidence relied upon or the reasoning for weight afforded contradictory opinions, the district court cannot merely look to the record or conclusory statements within the opinion, but must remand the case so that the ALJ can adequately explain if and how the evidence supports his RFC determination." Rucker v. Colvin, No. 715cv148, 2016 WL 5231824, at *4 (W.D. Va. Sept. 20, 2016) (citing Mascio, 780 F.3d at 637).

Here, the ALJ provided a limited explanation as to why he gave Dr. Kelly's opinion little weight. Specifically, the ALJ noted: 1) the record shows mild lumbar flexion restrictions; 2) the record shows minimal right foot issues after the last surgery; 3) the record does not show intense pain; 4) the evidence indicates that Michael had some opioid dependency; and 5) the record reflects that Michael missed work "some" around the time of the alleged onset date due to

10

exacerbation of his back pain but does not "show this much, and does not otherwise support the absenteeism limitation." R. 38.

While the ALJ provided reasons to give Dr. Kelly's opinion little weight, these reasons are not "good" or reflective of the evidence in the record. The ALJ does not explain how records noting mild lumbar flexion restrictions undermines Dr. Kelly's conclusion that Michael is limited to sitting and standing less than two hours at a time, and occasionally lifting 20 pounds or less. Dr. Kelly's treatment notes during the relevant period consistently reflect leg swelling and edema, knee pain, and back pain. R. 402, 590, 901, 913. Likewise, the ALJ does not relate his conclusion that Michael didn't have "intense pain," to treatment notes in the record. In fact, the record reflects consistent, persistent complaints of pain, pain management treatment, and the prescription of opioid, morphine and other narcotic pain medications. The ALJ speculates that Michael had some opioid dependency but does not explain how that conclusion contradicts Dr. Kelly's conclusions. Dr. Kelly was aware of Michael's opioid concerns, and after suspending his narcotic prescriptions for a brief period, saw fit to continue prescribing narcotic pain medication throughout the relevant period. Likewise, Drs. Dragovich, Dixon and Naldo all prescribed narcotic pain medication throughout the record to address Michael's complaints of ongoing pain. This contradicts the ALJ's conclusion that the record does not show intense pain.

Perhaps most concerning, however, is the ALJ's reliance upon two statements in the treatment notes of the podiatrist who operated on Michael's broken right foot, rather than the physician who treated Michael's back and knee pain for six consecutive years. The ALJ gives significant weight to two statements contained in podiatrist Dr. Naldo's treatment records that Michael had no further restrictions and could return to normal activity. Specifically, on February 9, 2018, Dr. Naldo noted that Michael reported significant pain in his foot, X-rays of the right

foot reflected that Michael's joints were in alignment and Dr. Naldo released him to transition out of the boot and return to all normal activity. R. 861. Likewise, on April 6, 2018, Dr. Naldo examined Michael's right foot and recommended that he continue with pain management, but that from an activity standpoint he has no further restrictions. R. 867.

When giving the statements of Michael's "orthopedic surgeon" Dr. Naldo significant weight, the ALJ does not note that the "orthopedic surgeon" is Michael's podiatrist, or that his statements are contained in office notes rather than a medical opinion. The ALJ fails to mention that Dr. Naldo recommended that Michael continue pain management on the same day that he released him with no further restrictions. R. 867. The ALJ further provides no indication that Dr. Naldo's statements are limited to Michael's right foot. The ALJ states that Dr. Naldo's "statements are given significant weight, as this was a specialist treating provider and the opinions are consistent with the mild examination findings in the record." R. 38. Dr. Naldo only treated Michael's right foot injury; there is no indication in his records that his findings applied to any other aspects of Michael's physical health other than his right foot. It appears from the ALJ's statements that he conflates Dr. Naldo's findings to apply to Michael's overall health and physical capability, not simply his broken right foot.

While an ALJ is under no obligation to accept any medical opinion, he or she must explain the weight afforded to each opinion. See Monroe, 826 F.3d at 190–91. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996). The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave" to the opinion and "the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996). If the ALJ provides a sufficient explanation, the court "must defer

to the ALJ's assignments of weights unless they are not supported by substantial evidence." Dunn v. Colvin, 607 Fed. Appx. 264, 267 (4th Cir. 2015) (citing Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012)). However, if the ALJ does not adequately explain the weight given to each medical opinion, the court cannot meaningfully review the ALJ's decision, and remand is warranted. Monroe, 826 F.3d at 190.

I find that the ALJ's reasons for giving little weight to the opinion of Michael's treating physician Dr. Kelly that he is limited to sedentary work are not supported by the record. Further, the ALJ's decision to give significant weight to statements by Michael's podiatrist that the ALJ appears to take out of context is, at best, insufficiently explained. The ALJ attempted to build a bridge from the evidence to his conclusions when weighing the medical opinion evidence in this case, but that bridge is not "accurate and logical," as required by Monroe v. Colvin.

I recognize that it is not my function to conduct a blank slate review of the evidence by reweighing conflicting evidence, determining credibility, or substituting my judgment for the ALJ's when "reasonable minds could differ." See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). In fact, I am precluded from doing so; it is the duty of the ALJ to explain the basis for his opinion. Here, the ALJ did not adequately weigh the conflicting evidence, specifically the opinions of Dr. Kelly and the social security reviewing physicians, and the ALJ did not sufficiently explain his reasoning to discount Dr. Kelly's findings. Accordingly, I conclude that substantial evidence does not support the ALJ's decision to discount the opinion of Dr. Kelly.[5]

---

[5] Because I find that remand is warranted based on the ALJ's failure to adequately explain his decision to discount Dr. Kelly's opinions, Michael's additional allegations of error will not be decided. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

## **CONCLUSION**

For these reasons set forth above, I **GRANT in part** Michael's motion for summary judgment, **DENY** the Commissioner's motion for summary judgment this case, and **REMAND** this matter to the Commissioner for additional consideration under sentence four of 42 U.S.C. § 405(g).

Entered:  December 21, 2020

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge